ORIGINAL



FARZAD RASTEGAR (State Bar #155555)
farzad@rastegarlawgroup.com
DOUGLAS W. PERLMAN (State Bar #167203)
dwp@rastegarlawgroup.com
RASTEGAR LAW GROUP, APC
1010 Crenshaw Boulevard, Suite 100
Torrance, California 90501
Tel. (310) 961-9600
Fax.(310) 961-9094

Attorneys for Plaintiff Ross Missaghi, and other similarly situated customers of Apple, Inc.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

ROSS MISSAGHI, individually, and on behalf of all other similarly situated customers of Apple, Inc.,

Plaintiffs,

vs.

APPLE, INC., a corporation; and DOES 1 through 100, inclusive,

Defendants.

CASE NO. 13-CV-2003 GAF (AJWx)

**SECOND AMENDED CLASS ACTION COMPLAINT**

1. Racketeer Influenced and Corrupt Organizations Act

2. Fraudulent Business Practices (California Business and Professions Code § 17200 et seq.)

**DEMAND FOR JURY TRIAL**



PLAINTIFFS hereby allege as follows:

### JURISDICTION

1. This Court is the proper court, and this action is properly filed in the Superior Court of the State of California, County of Los Angeles, because DEFENDANT maintains its corporate headquarters and major place of business in the State of California, and because some of the transactions at issue with one of the proposed class representatives occurred in the County of Los Angeles.

-1-

## PLAINTIFFS

2. PLAINTIFFS ROSS MISSAGHI and CHARLES THOMPSON ("NAMED PLAINTIFFS") on behalf of themselves and other similarly situated customers of APPLE, INC. and DOES 1-100 (collectively "PLAINTIFFS"), bring this Class Action against APPLE, INC. and DOES 1-100 (collectively DEFENDANTS) to recover, among other things, damages and diminution in value of defective Apple IPHONE4 models and IPHONE4S models manufactured and sold by Apple, Inc. PLAINTIFFS reserve the right to name additional class representatives.

3. NAMED PLAINTIFF ROSS MISSAGHI purchased an IPHONE4S, and NAMED PLAINTIFF CHARLES THOMPSON purchased an IPHONE4. PLAINTIFFS are purchasers of the IPHONE4 and IPHONE4S manufactured by Apple, Inc. Furthermore, PLAINTIFFS propose, as set forth below, the following subclasses:

    A. All purchasers of the IPHONE4 or IPHONE4S.

    B. All purchasers of the IPHONE4 or IPHONE4S who's devices suffered the power button failure described below.

    C. All purchasers of the IPHONE4 or IPHONE4S who's devices suffered the power button failure described below, and who received false information from APPLE, as described below, that the power button failure could not be repaired.

## DEFENDANT

4. At all relevant times alleged herein, NAMED PLAINTIFFS are informed and believe, and thereon alleges that Defendant APPLE, INC. is, and at all times relevant hereto was, a corporation. PLAINTIFFS are further informed and believe, and thereon allege, that DEFENDANT is authorized to conduct business in the State of California, and does conduct business in the State of California.

Plaintiff is further informed and believes that APPLE, INC. conducts business throughout the United States, and throughout the world.

5. The true names and capacities of DOES 1-100, inclusive, are unknown to PLAINTIFFS who therefore sue said DOE Defendants by fictitious names. PLAINTIFFS will amend this Complaint to show their true names and capacities when they have been ascertained.

## CLASS ACTION DESIGNATION

6. This action is appropriately suited for a Class Action because:

   A. The potential class is a significant number. Joinder of all purchasers of the IPHONE4 and the IPHONE4S individually would be impractical.

   B. This action involves common questions of law and fact to the potential class because the action focuses on a design defect in the IPHONE4 and the IPHONE4S that effects all purchasers of these products.

   C. The claims of the NAMED PLAINTIFFS are typical of the class because the defects in the IPHONE4S purchased by NAMED PLAINTIFF ROSS MISSAGHI the IPHONE4 purchased by NAMED PLAINTIFF CHARLES THOMPSON is identical to the defect in all products of the same models manufactured by APPLE, INC.

   D. The NAMED PLAINTIFFS are able to fairly and adequately protect the interests of all members of the class because it is in their best interests to prosecute the claims alleged herein to obtain damages and full compensation due to them for damages and diminution in value of all IPHONE4S's and IPHONE4s manufactured and sold by APPLE, INC.

## STATEMENT OF FACTS

7. On or about August 15, 2010, NAMED PLAINTIFF CHARLES THOMPSON purchased an IPHONE4 designed, manufactured, and sold by

Defendant APPLE, INC. Plaintiff purchased the foregoing IPHONE4 in the city of Buda, State of Texas. On or about October 15, 2011, NAMED PLAINTIFF ROSS MISSAGHI purchased an IPHONE4S, designed, manufactured, and sold by Defendant APPLE, INC. Plaintiff purchased the foregoing IPHONE4S in the County of Los Angeles, State of California.

8. NAMED PLAINTIFFS are informed and believe that the foregoing IPHONE4 and IPHONE4S were defective and unsuitable for their intended use. Specifically, after a number of uses, the power button on the IPHONE4 and IPHONE4S becomes stuck. Thereafter, the user is unable to power off or reboot the device. Other functions requiring use of the power button are also affected.

9. In or about 2011, approximately three months following the expiration of the warranty, the power button on the IPHONE4 purchased by NAMED PLAINTIFF CHARLES THOMPSON malfunctioned as described above, rendering the product unable to be powered off or rebooted.

10. In or about January, 2013, approximately three months following the expiration of the warranty, the power button on the IPHONE4S purchased by NAMED PLAINTIFF ROSS MISSAGHI malfunctioned as described above, rendering the product unable to be powered off or rebooted.

11. NAMED PLAINTIFFS are informed and believe that the foregoing defect is a result of the design of the IPHONE4 and the IPHONE4S, and that the defect exists in all IPHONE4s and IPHONE4S's manufactured by APPLE, INC. NAMED PLAINTIFFS are informed and believe that virtually all of the foregoing products have a power button that either 1) is already unusable following normal and customary use, or 2) will eventually become unusable, following normal and customary use.

12. NAMED PLAINTIFFS are informed and believe that, in addition to the limitations in function created by the foregoing defect, the defect also presents a serious safety hazard to purchasers and others.

13. NAMED PLAINTIFFS are informed and believe that Federal Aviation Administration regulations prohibit the use of mobile phones on aircraft while in the air, and such devices must be powered off before takeoff. The reason is safety. From the Federal Aviation Administration Website:

> "If you've flown with a commercial airline, you know the drill. Turn off all pagers, electronic games, MP3 and CD players, laptops and the like once the cabin door is closed, until the plane gets above 10,000 feet. No using cell phones at any time while the plane is in the air. But do you know the real reasons *why* you have to follow these rules?
>
> **It's a Safety Thing**
>
> There are still unknowns about the radio signals that portable electronic devices (PEDs) and cell phones give off. These signals, especially in large quantities and emitted over a long time, may unintentionally affect aircraft communications, navigation, flight control and electronic equipment."
> http://www.faa.gov/news/fact_sheets/news_story.cfm?newsid=6275

14. As set forth above, the defect at issue in this case, when it manifests, prevents the device from being turned off. The only way to turn off the items at issue is to allow the battery to drain until dead, a process that can take several days. Thus, every time NAMED PLAINTIFFS or another owner of a defective IPHONE4 or IPHONE4S brings the device on an airplane, unless the individual has thought ahead and gone through the inconvenience and time required to allow the battery to drain, the defect causes potential interference with "communications, navigation, flight control, and electronic equipment" in the airplane. The defect thus presents a safety hazard not only to the owner, but to everyone else on the airplane, as well as potentially people on the ground.

15. Another safety hazard relates to the inability to "reboot" the devices at issue. The IPHONE4 and IPHONE4S, like all "smart phones," are essentially computers, and, from time to time, suffer from software "glitches" which require rebooting before the device will function again. As set forth above, the products in which this defect has manifested cannot be rebooted without letting the battery

completely drain, a process which can take a period of days. Thus, if an IPHONE4 or IPHONE4S with a defective power button "freezes up" or suffers another malady which requires rebooting before it can be used, it will become completely non-functional for a period of potentially days.

16. The foregoing non-functionality presents a serious safety hazard. NAMED PLAINTIFFS are informed and believe that, years ago, public telephones were plentiful and could be easily located on street corners, at service stations, and other public places. At the present time, however, payphones are, and have been for a number of years, virtually extinct. Moreover, NAMED PLAINTIFFS are informed and believe that many people no longer keep a home telephone (i.e., a "land line"), and instead use their mobile phones for communicating home and away. In this situation, the owner of an IPHONE4 or IPHONE4S that suffers from the defect at issue could be prevented from contacting 911 Emergency Services in the event of a medical or other emergency.

17. NAMED PLAINTIFFS are informed and believe that, at the time that APPLE, INC. released the IPHONE4 and IPHONE4S for the sale to the public, that APPLE, INC. was aware of the foregoing defect, and failed to disclose the defect to purchasers the IPHONE4 and IPHONE4S. APPLE, INC. failed to disclose the foregoing defect to NAMED PLAINTIFFS, and NAMED PLAINTIFFS thus proceeded with their purchases of an IPHONE4 and IPHONE4S, respectively, without knowledge of this defect which would have otherwise materially affected their decisions.

18. NAMED PLAINTIFFS are informed and believe that, at the time they purchased their respective IPHONE4 and IPHONE4S, APPLE, INC. was aware that the purchases would be made as part of contracts with a cellular phone carrier service companies for a period of years, and that the foregoing defect would likely manifest after expiration of the warranty, before the termination of the contracts

with their respective carriers. NAMED PLAINTIFFS' respective IPHONE4 and IPHONE4S did in fact malfunction as set forth above, following expiration of the warranty, and with substantial periods of time left on their respective carrier contracts.

19. NAMED PLAINTIFFS are informed and believe that APPLE, INC., was aware that individuals such as NAMED PLAINTIFFS, with a defective IPHONE4 or IPHONE4S and existing carrier contracts, would therefore have an added incentive to purchase a new cellular phone manufactured by APPLE, INC., on account of the necessity of making future payments to their cellular phone carriers. NAMED PLAINTIFFS are informed and believe that, the decision to withhold information about the power button defect was not only part of a scheme to sell the defective IPHONE4 and IPHONE4S at issue, but was also part of a scheme to sell additional APPLE, INC. cellular phones in the period following the manifestation of the defect, and before the expiration of the individuals' cell phone carrier contracts.

20. Thereafter, NAMED PLAINTIFF CHARLES THOMPSON took his IPHONE4 to the Apple Store at the Barton Creek Mall, in Austin, Texas, showed the broken IPHONE4 to an APPLE, INC. employee, and inquired about repair of the item. The foregoing employee of APPLE, INC. informed NAMED PLAINTIFF CHARLES THOMPSON that the foregoing defect is not repairable, and that once the damage caused by the foregoing design defect has manifested, the user must either continue to use the IPHONE4 in its diminished state, or purchase a replacement for $150.00 (for a used, refurbished IPHONE4).

21. In or about January, 2013, NAMED PLAINTIFF ROSS MISSAGHI took his IPHONE4S to the "Apple Store Century City," in Los Angeles, California, showed the broken IPHONE4S to an APPLE, INC. employee, and inquired about repair of the item. The foregoing employee of APPLE, INC. informed NAMED

PLAINTIFF ROSS MISSAGHI that the foregoing defect is not repairable, and that once the damage caused by the foregoing design defect has manifested, the user must either continue to use the IPHONE4S in its diminished state, or purchase a replacement for $199.00 (for a used, refurbished IPHONE4S). This verbal communication was followed by a written communication from the foregoing APPLE, INC. employee to NAMED PLAINTIFF ROSS MISSAGHI reiterating the substance of the verbal communication, that the defect could not be repaired, and the proposed solution was the purchase of refurbished IPHONE4S for $199.00. The foregoing email was transmitted to NAMED PLAINTIFF ROSS MISSAGHI on January 29, 2013, at 11:58:54 Pacific Standard Time, by APPLE, INC. "Employee 198223658-R108."

22. NAMED PLAINTIFFS are informed and believe that APPLE, INC. gave the same information to numerous other IPHONE4 owners and IPHONE4S owners, pursuant to an official policy and practice of the company. NAMED PLAINTIFFS are informed and believe that the foregoing information was in fact false, that APPLE INC. was aware that it was false, and that the defect can in fact be repaired for a fraction of the cost of a refurbished IPHONE4 or IPHONE4S.

23. NAMED PLAINTIFFS are informed and believe that the foregoing false information regarding the unavailability of repair was communicated to NAMED PLAINTIFFS as part of a scheme by APPLE, INC. to cause individuals such as NAMED PLAINTIFFS to purchase additional products manufactured by APPLE, INC., rather than having their defective IPHONE4 or IPHONE4S repaired.

24. NAMED PLAINTIFFS were misled by the foregoing false information, and in reliance thereon, did not obtain repair of their defective IPHONE4 and IPHONE4S. Furthermore, in reliance on the foregoing false information, NAMED PLAINTIFF ROSS MISSAGHI purchased a new IPHONE5.

25. Due to the foregoing design defect, NAMED PLAINTIFFS are informed and believe that their IPHONE4 and IPHONE4S have been diminished in value, as have been the same model products purchased by others, given that the defect with either have manifested, or there is widespread knowledge of the potential that it will manifest shortly in the future.

26. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

    a. whether APPLE, INC. had knowledge of the design defect prior to the sale of some or all models of the IPHONE4 and IPHONE4S;

    b. whether APPLE, INC. concealed the design defect affecting the IPHONE4 and IPHONE4S;

    c. whether APPLE, INC. misrepresented the suitability of the IPHONE4 and PHONE4S for their intended use;

    d. whether the defect constitutes a safety hazard for purchasers of the IPHONE4 and IPHONE4S.

    e. whether APPLE, INC. concealed the foregoing design defect as part of a scheme to sell the defective products, and to sell additional products following manifestation of the defect.

    f. whether APPLE, INC. knowingly gave false information to purchasers of the defective IPHONE4 and IPHONE4S, that the defect could not be repaired.

    g. whether NAMED PLAINTIFFS and the Class are entitled to damages, restitution, equitable relief and other relief; and

    h. the amount and nature of such relief to be awarded to NAMED PLAINTIFFS and the Class.

27. A class action is superior to other available methods for fair and efficient adjudication of this controversy because joinder of all Class members is impracticable. The prosecution of separate actions by individual members of the Class would impose heavy burdens upon the courts and Defendant, and would create a risk of inconsistent or varying adjudications of the questions of law and fact common to the Class. A class action would achieve substantial economies of time, effort and expense, and would assure uniformity of decision as to persons similarly situated without sacrificing procedural fairness.

## FIRST CAUSE OF ACTION

**Racketeer Influenced and Corrupt Organizations Act**

**18 USC § 1962(b) and (c)**

28. NAMED PLAINTIFFS incorporate by reference and reallege all paragraphs alleged herein.

29. Beginning in approximately 2005, Defendant began negotiating with A T & T to take part in a joint venture whereby APPLE, INC. would provide Iphones (and later released models) and A T & T would provide wireless telephone service. This negotiation ultimately resulted in an association in fact between Defendant and A T & T, whereby they agreed that they would jointly market Iphones, and A T & T would be the exclusive wireless carrier for the Iphone (and later released models) for a period of five years. The common purpose of this association in fact was, and continues to be, to sell as many Iphones as possible.

30. The common purpose of this association in fact is evidenced by a revenue sharing agreement between APPLE, INC. and A T & T, whereby APPLE, INC. would receive part of the revenue from A T & T sales of Iphones, and part of the revenue from monthly service contracts. The association also provided that

APPLE, INC. would have responsibility for design and manufacturing of Iphones (and later released models), and would have exclusive control over the sale price, while A T & T carried out other responsibilities, such as providing wireless voice and data services. The purpose of this association in fact was and remains the sale of as many iphones (and later released models) as possible.

31. In furtherance of the purpose of selling as many iphones as possible, APPLE, INC. purposefully and deliberately concealed from consumers the power button defect described above in the IPHONE4 and IPHONE4S. No reasonable consumer, including NAMED PLAINTIFFS herein, would have purchased an IPHONE4 or IPHONE4S as part of a two year carrier service contract knowing of the power button defect which would very likely seriously reduce the usefulness of the device substantially in advance of the end of its useful life and in advance of the expiration of the expiration of the two year carrier service contract.

32. NAMED PLAINTIFFS are informed and believe that, in furtherance of the purpose of selling as many iphones as possible, APPLE, INC., in the course of interstate communications with A T & T, via email and US Mail, deliberately failed to disclose the above described power button defect on the IPHONE4 and IPHONE4S. NAMED PLAINTIFFS are informed and believe that, had APPLE, INC. not deliberately concealed the foregoing defect, A T & T would not have agreed to continue its association in fact with APPLE, INC. with regard to the joint marketing and sales of the IPHONE4 and IPHONE4S.

33. During the time of the joint venture described above, APPLE, INC., disseminated through interstate communications advertisements making claim to the superior quality and functionality of the IPHONE4 and IPHONE4S. None of these advertisements disclosed the power button defect described above. Had NAMED PLAINTIFFS been aware of the defect, they would not have purchased their respective IPHONE4 or IPHONE4S or entered into a two year carrier service

contract for the same. As a direct and proximate result of APPLE, INC.'s failure to disclose the foregoing defect, NAMED PLAINTIFFS purchased their respective IPHONE4 and IPHONE4S, expending significant funds not only the devices, but also on the two year carrier service contracts.

34. Furthermore, as a direct and proximate result of APPLE, INC.'s deliberately false representation that the power button defect could not be repaired, consumers such as NAMED PLAINTIFF ROSS MISSAGHI were caused to expend additional funds on a new APPLE iphone, which he would not have done but for his reliance on the foregoing false representation.

35. APPLE, INC.'s association in fact with A T & T to jointly market and sell the IPHONE4 and IPHONE4S constitutes an "enterprise" within the meaning of 18 USC § 1962( c), and as that term is defined in 18 USC § 1961(4).

36. The foregoing enterprise involved distribution and sales of defective products across state lines, thereby forming and affecting interstate commerce.

37. APPLE, INC. conducted, participated in, regulated, directed and managed the foregoing enterprise, through a pattern of racketeering activity in violation of 18 USC § 1962(b) and ( c). As a direct and proximate result, NAMED PLAINTIFFS and other purchasers of the IPHONE4 and IPHONE4S have incurred damages in money they expended for the purchase of defective IPHONE4s and IPHONE4S's, and replacements for these defective devices.

## SECOND CAUSE OF ACTION

### California Business and Professions Code § 17200 *et seq.*

38. NAMED PLAINTIFFS incorporate by reference and reallege all paragraphs alleged herein.

39.     By deliberately failing to disclose to its customers the defect described prior to sale, APPLE, INC.'s acts constitute fraudulent, unfair and unlawful business practices under Business and Professions Code § 17200, *et seq.*

40.     Furthermore, By falsely informing its customers that the defect described above is not repairable, APPLE, INC.'s acts constitute fraudulent, unfair and unlawful business practices under Business and Professions Code § 17200, *et seq.*

41.     DEFENDANT's communications to its customers constitute a business practice because they were done pursuant to official company policy repeatedly over a significant period of time, and in a systematic manner to the detriment of PLAINTIFFS.

42.     In reliance on the foregoing fraudulent business practices, NAMED PLAINTIFFS incurred damages in the form of money expended on a defective IPHONE4 and IPHONE4S, respectively, and on a two year contract for carrier service for the same. Furthermore, in reliance on APPLE, INC.'s fraudulent representation that the power button defect in the IPHONE4S could not be repaired, NAMED PLAINTIFF ROSS MISSAGHI incurred damages in the form of money expended on a replacement for his defective IPHONE4S.

43.     For the four (4) years preceding the filing of this action, PLAINTIFFS have suffered damages and/or restitution in an amount according to proof at time of trial, but in excess of the jurisdiction of this Court.

## PRAYER FOR RELIEF

**WHEREFORE**, NAMED PLAINTIFFS respectfully request that this Honorable Court enter judgment against APPLE, INC. as follows:

A.     For an order certifying this case as a class action;

Not used

B. For an order appointing NAMED PLAINTIFFS as class representative and Rastegar Law Group as class counsel;

C. For an order ruling that NAMED PLAINTIFFS and members of the Class have properly revoked acceptance of the IPHONE4 and IPHONE4S, and are entitled to a full refund of their purchase price;

D. For an order awarding damages to NAMED PLAINTIFFS and the members of the Class, including the diminution in value of their IPHONE4s and IPHONE4S's;

E. For an order awarding NAMED PLAINTIFF and Class members incidental and consequential damages, including the costs associated with purchasing fully operational and functional cell phones, and all other damages allowable under law;

F. For an order requiring APPLE, INC. to disgorge all profits, benefits, and other compensation APPLE, INC. obtained from the sale of these products, including actual damages, and to pay restitution to NAMED PLAINTIFFS and the Class;

G. For an order awarding NAMED PLAINTIFFS and the Class all costs of this action, including attorney fees and costs, pre-judgment and post-judgment interest;

H. For punitive and exemplary damages; and

I. For an order granting any such other relief as the Court deems just and proper.

## JURY TRIAL DEMANDED

NAMED PLAINTIFFS demand a trial by jury for all claims so triable.

DATED: June 17, 2013

Respectfully submitted,

RASTEGAR LAW GROUP, APC

By: *[signature]*
Douglas W. Perlman
Attorneys for Plaintiffs

Service List

| | |
|---|---|
| Richard B. Goetz, Esq.<br>Kelsey M. Larson, Esq.<br>O'MELVENY & MYERS LLP<br>400 S. Hope Street<br>Los Angeles, CA 90071-2899<br>Tel: (213) 430-6000<br>Fax: (213) 430-6407 | Attorneys for Defendant<br>APPLE, INC. |
| Matthew D. Powers, Esq.<br>O'MELVENY & MYERS LLP<br>Two Embarcadero Center, 28th Floor<br>San Francisco, CA 94111-3823<br>Tel: (415) 984-8700<br>Fax: (415) 984-8701 | Attorneys for Defendant<br>APPLE, INC. |

I declare under penalty of perjury under the laws of the State of California that the above is true and correct. Executed on June 17, 2013, at Torrance, California.

Jessica T. Banales

SECOND AMENDED CLASS ACTION COMPLAINT

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of 18 years, and not a party to this action. My business address is 1010 Crenshaw Boulevard, Suite 100, Torrance, California 90501.

On June 17, 2013, I served the following document or documents:

**SECOND AMENDED CLASS ACTION COMPLAINT**

[ ] **By fax transmission.** Based on an agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax numbers listed below. No error was reported by the fax machine that I used. A copy of the record of the fax transmission, which is printed out, is attached.

[X] **By United States mail.** I enclosed the documents in a sealed envelope or package addressed to the persons at the address listed below (specify one):

  [ ] Deposited the sealed envelope with the United States Postal Service, with the postage fully prepaid.

  [X] Placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with the business's practices for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

I am a resident or employed in the county where mailing occurred. The envelope or package was placed in the mail at Torrance, California.

[ ] **By personal service.** I personally delivered the documents to the persons at the addresses listed below. (1) For a party represented by an attorney, the delivery was made to the attorney or at the attorney's office by leaving all the documents in an envelope or package that was clearly labeled to identify the attorney being served with a receptionist or an individual in charge of the office. (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not less than 18 years of age between the hours of eight in the morning and six in the evening.

[ ] **By messenger service.** I served the documents by placing them in an envelope or package addressed to the persons at the addresses listed below and providing them to a professional messenger service for service. A Declaration of Messenger is attached.

[ ] **By overnight delivery.** I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons at the addresses listed below. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

[ ] **By e-mail or electronic transmission.** Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the person at the e-mail addresses listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

**SECOND AMENDED CLASS ACTION COMPLAINT**