UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-02003 GAF (AJWx) | Date | August 28, 2013 |
|---|---|---|---|
| Title | Ross Missaghi v. Apple Inc et al | | |

| Present: The Honorable | **GARY ALLEN FEESS** | | |
|---|---|---|---|
| Stephen Montes | None | | N/A |
| Deputy Clerk | Court Reporter / Recorder | | Tape No. |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: | |
| None | | None | |

**Proceedings:** (In Chambers)

### ORDER RE: MOTIONS TO COMPEL ARBITRATION, DISMISS, & STRIKE

### I.
### INTRODUCTION

Plaintiffs Ross Missaghi and Charles Thompson bring this putative consumer class action against Defendant Apple, Inc. pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962 regarding Apple's iPhone 4 and 4s devices. Plaintiffs' RICO claim asserts that Apple and non-party AT&T formed an enterprise – a joint venture – to sell as many iPhones as possible and that Apple participated in the enterprise through a pattern of racketeering activity involving the concealment of a design defect that caused the iPhone's power button to become stuck after a number of uses rendering many functions of the device unusable. Plaintiffs believe that Apple had a duty to disclose this defect due to the safety hazards it presents. On behalf of all iPhone 4 and 4s purchasers, over an unspecified period of time, Plaintiffs assert a RICO claim and a derivative claim pursuant to Cal. Bus. & Prof. Code §§ 17200, et seq. ("UCL").

Before the Court now are Apple's motions to compel arbitration and to dismiss and strike. (Docket No. 24, [Mot. to Compel Arbitration ("Compel Mem.")]; Docket No. 22, [Mot. to Dismiss ("Dismiss Mem.")].) Apple moves to compel arbitration through equitable estoppel on the basis that Plaintiffs' RICO and UCL claims necessarily implicate the Wireless Customer Agreement ("WCA") signed between Plaintiffs and AT&T. Apple moves to dismiss Plaintiffs' Second Amended Complaint ("SAC") on the basis that the claims are inadequately pleaded, and moves to strike one of Plaintiffs' putative sub-classes on the basis that it necessarily contains iPhone purchasers who have suffered no injury.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-02003 GAF (AJWx) | Date | August 28, 2013 |
|---|---|---|---|
| Title | Ross Missaghi v. Apple Inc et al | | |

  For the reasons that follow, the Court finds that Plaintiffs' claims are not intertwined with the WCA, and therefore Apple is unable to use equitable estoppel to compel arbitration. However, the Court also finds both of Plaintiffs' claims inadequately pleaded. Accordingly, the Court **DENIES** Apple's motion to compel arbitration, but **GRANTS** Apple's motion to dismiss. Because the Court dismisses Plaintiffs' SAC, the Court **DENIES** Apple's motion to strike as **MOOT**.

## II.
## BACKGROUND

### A. BACKGROUND FACTS

  Plaintiff Thompson asserts that on or about August 15, 2010, he purchased an iPhone 4 in Buda, Texas. (Docket No. 21, [Second Am. Compl. ("SAC")] ¶ 7.) Plaintiff Missaghi asserts that on or about October 15, 2011, he purchased an iPhone 4s in Los Angeles County. (Id.) Plaintiffs assert that "after a number of uses, the power button on the iPhone 4 and iPhone 4s becomes stuck," after which "the user is unable to power off or reboot the device." (Id. ¶ 8.) Plaintiffs assert that their respective power buttons became stuck and nonfunctional about three months after the expiration of the warranty. (Id. ¶¶ 9-10.) Plaintiffs believe that the power buttons malfunctioned as a result of a design defect, which is present and affects or will affect all iPhone 4 and iPhone 4s devices. (Id. ¶ 11.)

  Plaintiffs assert that the design defect presents a safety hazard. (Id. ¶ 12.) First, when the power button defect manifests, it prevents users from powering off their iPhones on an airplane. (Id. ¶¶ 13-14.) Plaintiffs put forth a quote from the Federal Aviation Administration website wherein the FAA states that cell phone signals may unintentionally affect aircraft equipment. (Id. ¶ 13.) Second, Plaintiffs assert that the power button defect presents a safety hazard in that, once the defect manifests, the phone cannot be rebooted in the case of a glitch. (Id. ¶ 15.) This, Plaintiffs believe, is problematic because, if the phone suffers a glitch, users will be unable to call 911 in case of an emergency. (Id. ¶ 16.)

  Plaintiffs allege that Apple was aware of the defect at the time it released the iPhone 4 and 4s devices for sale, but failed to disclose the defect. (Id. ¶ 17.) Further, Plaintiffs allege that Apple was aware that the defect "would likely manifest after expiration of the warranty, [but] before the termination of the [user's cell phone carrier service] contract[] . . . ." (Id. ¶ 18.) Thus, Plaintiffs allege that "the decision to withhold information about the power button defect was not only part of a scheme to sell the defective [phones] at issue, but was also part of a scheme to sell additional [Apple] cellular phones in the period following the manifestation of the defect, and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-02003 GAF (AJWx) | Date | August 28, 2013 |
|---|---|---|---|
| Title | Ross Missaghi v. Apple Inc et al | | |

before the expiration of the individuals' cell phone carrier contracts." (Id. ¶ 19.)

Once the defect manifested, Plaintiffs assert that they each took their respective phones to Apple Stores, where employees told them that the defect was not repairable and thus the "user must either continue to use the [phone] in its diminished state, or purchase a replacement . . . ." (Id. ¶¶ 20-21.) Plaintiffs also allege that Missaghi received a follow-up email to that effect. (Id. ¶ 20.) Plaintiffs allege that Apple made the aforementioned representation to other iPhone 4 and 4s users pursuant to an official policy, but that the information was false and in fact provided as part of the scheme to cause Apple users to purchase additional Apple products. (Id. ¶¶ 22-23.)

## B. RICO FACTS

In order to establish a RICO claim, Plaintiffs make various allegations regarding the relationship between Apple and AT&T. Plaintiffs assert that beginning in or about 2005, Apple and AT&T entered into a joint venture whereby Apple and AT&T would jointly market the iPhone and AT&T would be the exclusive wireless carrier for five years. (Id. ¶ 29.) Plaintiffs allege that "[t]he common purpose of this association in fact was, and continues to be, to sell as many iPhones as possible." (Id.) Plaintiffs further allege that there was a revenue sharing agreement between Apple and AT&T, whereby Apple "would receive part of the revenue from AT&T sales of iPhones, and part of the revenue from monthly service contracts." (Id. ¶ 30.) Plaintiffs assert that this association constitutes an enterprise, "which involved distribution and sales of defective products across state lines . . . ." (Id. ¶¶ 35-36.)

Plaintiffs contend that, in order to further the purpose of the association, Apple "purposefully and deliberately concealed from consumers the power button defect . . . ." (Id. ¶ 31.) Plaintiffs allege that had Apple not concealed the defect, "AT&T would not have agreed to continue its association in fact with [Apple] with regard to the joint marketing and sales of the [iPhones]." (Id. ¶ 32.) Furthermore, Plaintiffs allege that had they known about the defect, they would not have purchased their iPhones or entered into a two year service agreement with AT&T. (Id. ¶ 33.)

## C. THE CLASSES

Plaintiffs purport to represent three subclasses:

A. All purchasers of the iPhone 4 or iPhone 4s.

B. All purchasers of the iPhone 4 or iPhone 4s who's [sic] devices suffered the power

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-02003 GAF (AJWx) | Date | August 28, 2013 |
|---|---|---|---|
| Title | Ross Missaghi v. Apple Inc et al | | |

button failure described [in the SAC].

C. All purchasers of the iPhone 4 or iPhone 4s who's [sic] devices suffered the power button failure described [in the SAC], and who received false information from Apple, as described [in the SAC], that the power button failure could not be repaired.

(Id. ¶ 3.)

### III.
### DISCUSSION

**A. MOTION TO COMPEL ARBITRATION**

Apple argues that Plaintiffs' claims depend upon and are intertwined with the terms of the WCA and AT&T's business relationship with Apple, and Plaintiffs' claims fall under the arbitration clause of the WCA. (Compel Mem. at 1.)¹ Therefore, Apple asserts that, on the theory of equitable estoppel, this case should be sent to arbitration on the basis of the arbitration clause in the WCA and stayed in this Court. Id. Plaintiffs oppose solely on the basis that Plaintiffs' claims are not in fact intertwined with the WCA. (Docket No. 30, [Opp. to Compel Mem. ("Compel Opp.")] at 2.)

**1. THE FAA**

Under § 2 of the Federal Arbitration Act, the FAA governs any arbitration provision contained in a "contract evidencing a transaction involving commerce." 9 U.S.C. § 2. The Supreme Court has stated that the word "'involving' . . . signals an intent to exercise Congress' commerce power to the full." Allied-Bruce Terminix Companies, Inc. v. Dobson, 513 U.S. 265, 277 (1995); see also Southland Corp. v. Keating, 465 U.S. 1, 14 (1984). Generally speaking, the FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983). But where the issue is "whether a particular party is bound by the arbitration agreement . . . , the liberal federal policy regarding the scope of arbitrable issues is inapposite." Comer v. Micor, Inc., 436 F.3d 1098, 1104 (9th Cir. 2006).

---

¹ An example of the WCA, to which Plaintiffs do not object, is provided by Apple. (Docket No. 24-11, [Declaration of Stacie Dobbs ("Dobbs Decl.")], Ex. 2 [WCA].)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-02003 GAF (AJWx) | Date | August 28, 2013 |
|---|---|---|---|
| Title | Ross Missaghi v. Apple Inc et al | | |

### 2. EQUITABLE ESTOPPEL - LEGAL STANDARDS

A party who is not a signatory to the arbitration agreement may still compel "arbitration under the FAA if the relevant state contract law allows the litigant to enforce the agreement." Kramer v. Toyota Motor Corp., 705 F.3d 1122, 1128 (9th Cir. 2013); see also Letizia v. Prudential Bache Secur., Inc., 802 F.2d 1185, 1187 (9th Cir. 1986). Among the various state contract law methods for binding nonsignatories to a contract is equitable estoppel. Comer, 436 F.3d at 1101. "Equitable estoppel precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes." Id. (internal quotations and citation omitted).

California courts apply equitable estoppel to allow a nonsignatory to enforce an arbitration clause against a signatory in two circumstances:

> (1) when a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory or the claims are intimately founded in and intertwined with the underlying contract, and (2) when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and the allegations of interdependent misconduct [are] founded in or intimately connected with the obligations of the underlying agreement.

Kramer, 705 F.3d at 1128-29.[2]

Apple moves to compel arbitration solely on the basis of the first category. (Docket No. 31, [Reply to Mot. to Compel ("Compel Reply")] at 3.)

### 2. EQUITABLE ESTOPPEL - APPLIED

California courts evaluating whether the claims are intertwined with the underlying contract containing the arbitration clause focus on two elements:

> (1) the subject matter of the dispute must be 'intertwined with the contract providing for arbitration'; and (2) there must be a 'relationship among the parties of a nature that justifies a conclusion that the party which agreed to arbitrate with another entity should be

---

[2] As Apple notes, it is not particularly relevant whether the Court applies California law, where Missaghi signed the WCA, or Texas law, where Thompson signed the WCA, because the two states have substantially similar tests. (Compel. Mem. at 7, n.7; see Meyer v. WMCO-GP, LLC, 211 S.W.3d 302, 305-306 (Tex. 2006).)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-02003 GAF (AJWx) | Date | August 28, 2013 |
|---|---|---|---|
| Title | Ross Missaghi v. Apple Inc et al | | |

estopped from denying an obligation to arbitrate a similar dispute with the adversary which is not a party to the arbitration agreement.'

In re Apple iPhone Antitrust Litig., 874 F. Supp. 2d 889, 898 (N.D. Cal. 2012) ("In re iPhone") (quoting Mundi v. Union Sec. Life Ins. Co., 555 F.3d 1042, 1046 (9th Cir. 2009)).[3]

### *a. Precedent*

There is very little connection between issues involving the alleged defect and the terms and conditions of the CWA. Precedent within this Circuit strongly indicates that, in circumstances such as those presented in this case, the claims against Apple cannot be said to be intimately founded in and intertwined with the underlying contract.

In a very recent decision, Rajagopalan v. NoteWorld, LLC, 718 F.3d 844 (9th Cir. 2013), the Ninth Circuit declined to compel arbitration of a RICO claim through equitable estoppel. In that case, the plaintiff signed up for a debt solution service with debt relief service provider First Rate Debt Solutions ("First Rate"), which used the defendant NoteWorld, LLC ("NoteWorld") to manage the plaintiff's account with First Rate. Id. at 845-46. When the plaintiff sought a refund of his account, NoteWorld refused to refund money that had already been disbursed to First Rate. Id. at 846. The plaintiff then brought suit against NoteWorld, alleging a number of claims including an alleged RICO violation. Id. NoteWorld sought to compel arbitration on multiple bases, including equitable estoppel through the arbitration clause contained in the plaintiff's contract with First Rate. Id. The Court rejected the argument noting that "[w]e have never previously allowed a non-signatory defendant to invoke equitable estoppel against a signatory plaintiff, and we decline to expand the doctrine here." Id. at 847. The Court observed that "Rajagopalan does not contend that NoteWorld or any other party breached the terms of the contract. Instead, Rajagopalan has statutory claims that are separate from the [] contract itself." Id. (internal quotations and citations omitted, alteration in original). The circuit therefore affirmed the district court which had concluded:

/ / /

---

[3] At the time of In re iPhone, Mundi was the Ninth Circuit's most recent pronouncement on equitable estoppel in the arbitration context. The two prongs noted above stemmed from Mundi's less-than-clear support of the Second Circuit's equitable estoppel analysis in Sokol Holdings, Inc. v. BMB Munai, Inc., 542 F.3d 354 (2d Cir. 2008). Mundi, 555 F.3d at 1046. The Ninth Circuit in Kramer upheld the continuing validity of Mundi. Kramer, 705 F.3d at 1130 n.5. Because Kramer specifically noted that Mundi has continuing validity, the Court takes Mundi and its progeny as good and persuasive precedent.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-02003 GAF (AJWx) | Date | August 28, 2013 |
|---|---|---|---|
| Title | Ross Missaghi v. Apple Inc et al | | |

Although the complaint invites the Court to conduct some review of the contract documentation as a whole, including the Software Subscription Agreement, any review will be limited to the Court's evaluation of Plaintiff's claims under RICO and Washington State law. To resolve those claims, the Court need not interpret and examine in detail the provisions of the Software Subscription Agreement or otherwise enforce its terms.

Rajagopalan v. Noteworld, LLC, 2012 U.S. Dist. LEXIS 29849, at *18 (W.D. Wash. Mar. 6, 2012).

The Court further finds persuasive three decisions by Judge Ware in the Northern District stemming from litigation regarding the iPhone: In re iPhone, In re Apple & AT&TM Antitrust Litig., 826 F. Supp. 2d 1168 (N.D. Cal. 2011) ("In re Apple"), and In re Apple Iphone 3G Prods. Liab. Litig., 859 F. Supp. 2d 1084 (N.D. Cal. 2012) ("In re 3G"). In In re iPhone, the plaintiffs brought a class action against Apple alleging violations of the Sherman Act on the basis that it was conspiring with non-party AT&T "to monopolize an alleged aftermarket for voice and data services for iPhones, and also by monopolizing or attempting to monopolize an alleged aftermarket for software applications . . . for iPhones." 874 F. Supp. 2d at 892. Apple moved to compel arbitration on the basis of the AT&T WCA. Id. at 898. The Court denied that motion on the basis that the subject matter of the dispute at hand was not intertwined with the WCA, namely because the causes of action involved the alleged aftermarket for iPhone applications pertained solely to Apple's conduct in that market. Id.

The In re iPhone decision involved facts that were easily distinguished from those present in In re Apple and In re 3G. In In re Apple the plaintiffs brought a class action against Apple and AT&T under the Sherman Act on the basis that the plaintiffs signed two-year service agreements with AT&T unaware that AT&T and Apple had entered into an agreement to make AT&T the exclusive service provider for iPhone for five years. 826 F. Supp. 2d at 1170-71. Plaintiffs alleged that the undisclosed Apple-AT&T agreement was contrary to their reasonable expectations and violative of the Sherman Act. The Court found that Apple could compel arbitration on the basis of equitable estoppel utilizing AT&T's service contract because:

> Plaintiffs themselves have contended throughout this litigation that their antitrust and related claims against Defendant ATTM and Defendant Apple arise from their respective ATTM service contracts. At Plaintiffs' request, the Court certified a single unified class as follows: 'All persons who purchased or acquired an iPhone in the United States and entered into a two-year agreement with [Defendant ATTM] for iPhone voice and data service [at] any time from June 29, 2007, to the present.' . . . Thus, Plaintiffs are now

Case 2:13-cv-02003-GAF-AJW   Document 33   Filed 08/28/13   Page 8 of 16   Page ID #:658

LINKS: 22, 24

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | CV 13-02003 GAF (AJWx) | Date | August 28, 2013 |
|---|---|---|---|
| Title | Ross Missaghi v. Apple Inc et al | | |

estopped from contending otherwise.

Id, at 1178. Additionally, in In re 3G, the plaintiffs brought a class action alleging, among other things, that Apple and AT&T acted in concert to sell the iPhone 3G knowing that the AT&T 3G network was inadequate and the iPhone 3G had defective hardware and/or software. 859 F. Supp. 2d at 1093-94. Apple later moved to compel arbitration on the basis of equitable estoppel utilizing AT&T's WCA. The Court found that the complaint was truly "based on the core allegation that the 3G network could not accommodate iPhone 3G users, and that Plaintiffs were deceived into paying higher rates for service which could not be delivered on the 3G network." Id. at 1094. The Court also found "that Plaintiffs' allegations rely on the 'two-year data plan contract' they entered into with Defendant [AT&T] - i.e., the [WCA] - insofar as Plaintiffs allege that they 'were injured and lost money or property' pursuant to the [WCA]." Id. Although the plaintiffs made allegations regarding hardware and software problems in the iPhone itself, the Court found that "any adjudication of claims as to [Apple] would necessarily require a determination of the sufficiency of ATTM's 3G network infrastructure." Id. at 1095 (internal quotations omitted).

> b. *This Action*

The Ninth Circuit has taken a similar view to that of the Fifth Circuit which has bluntly stated, "a nonsignatory [will be allowed] to invoke an arbitration agreement only in rare circumstances." Westmoreland v. Sadoux, 299 F.3d 462, 465 (5th Cir. 2002). This is not one of those rare circumstances. Plaintiffs' claims against Apple are not intimately intertwined with the WCA.

While Plaintiffs do allege that Apple and AT&T engaged in an enterprise for the purpose of selling as many iPhones as possible, the crux of this action is twofold: (1) whether Apple concealed the alleged power button defect, and (2) whether Apple engaged in fraudulent business practices by misrepresenting whether the defect could be repaired. Neither of these issues entails an interpretation or detailed examination of the WCA. Apple argues that "[t]he crux of Plaintiffs' new complaint is that they were duped into buying an iPhone and signing a two-year agreement with AT&T because Apple supposedly 'failed to disclose' that their phones might break before the end of that two-year contract." (Compel Mem. at 2.) This misstates the allegation. Rather, Plaintiffs contend that Apple, knowing that AT&T customers sign a two-year WCA, purposefully concealed the alleged power-button defect, which would manifest prior to the conclusion of the WCA. (SAC ¶¶ 18, 31.) The only aspect of the WCA that might be relevant to this suit is the term of the WCA, which no party disputes is two years. As Plaintiffs argue, "[t]he service agreement and its two-year duration is a simple fact." (Docket No. 30,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-02003 GAF (AJWx) | Date | August 28, 2013 |
|---|---|---|---|
| Title | Ross Missaghi v. Apple Inc et al | | |

[Opp. to Compel Mem. ("Compel Opp.")] at 3.)  The existence of the two-year WCA lends perhaps a motive on Apple's part to conceal the anticipated useful life of the iPhone, but Plaintiffs' claims are certainly not interwined with it.  Plaintiffs' allegations merely claim that Apple took advantage of the WCA term to perpetrate its allegedly fraudulent scheme.

This is not an instance where Plaintiffs are attempting to use the WCA "as a sword and at the same time choos[ing] to ignore it as a shield."  Amisil Holdings Ltd. v. Clarium Capital Mgmt. LLC, 622 F. Supp. 2d 825, 841 (N.D. Cal. 2007).  The purpose of the two-year WCA in this action is, at most, the fact of its existence, not its contents.  Accordingly, Apple's motion to compel arbitration is **DENIED**.

**B. MOTION TO DISMISS**

**1. LEGAL STANDARD**

A complaint may be dismissed if it fails to state a claim upon which relief can be granted.  See Fed. R. Civ. P. 12(b)(6).  On a motion to dismiss under Federal Rule of Civil Procedure ("F.R.C.P.") 12(b)(6), a court must accept as true all factual allegations pleaded in the complaint, and construe them "in the light most favorable to the nonmoving party."  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337–38 (9th Cir. 1996); see also Stoner v. Santa Clara County Office of Educ., 502 F.3d 1116, 1120–21 (9th Cir. 2007).  Dismissal under Rule 12(b)(6) may be based on either (1) a lack of a cognizable legal theory, or (2) insufficient facts under a cognizable legal theory.  SmileCare Dental Grp. v. Delta Dental Plan of Cal., Inc., 88 F.3d 780, 783 (9th Cir. 1996) (citing Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984)).

Under Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The Supreme Court has interpreted this rule to allow a complaint to survive a motion to dismiss only if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (citing Twombly, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has not sufficiently established that the pleader is entitled to relief.  Id. at 679.  Furthermore "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. . . .  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  Iqbal, 556 U.S. at 678-79; see also Warren v. Fox

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-02003 GAF (AJWx) | Date | August 28, 2013 |
|---|---|---|---|
| Title | Ross Missaghi v. Apple Inc et al | | |

Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003).

      Moreover, Rule 9(b) imposes heightened pleading requirements for claims of fraud. See Fed. R. Civ. P. 9(b). A plaintiff "must state with particularity the circumstances constituting fraud," but can allege generally "[m]alice, intent, knowledge, and other conditions of a person's mind." Id. The particularity requirement "has been interpreted to mean the pleader must state the time, place and specific content of the false representations as well as the identities of the parties to the misrepresentation." Miscellaneous Serv. Workers, Drivers & Helpers, Teamsters Local No. 427 v. Philco-Ford Corp., 661 F.2d 776, 782 (9th Cir. 1981). "Averments of fraud must be accompanied by the 'who, what, when, where, and how' of the misconduct charged. Vess v. Cib-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) (citing Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997).) In addition, the plaintiff must "set forth what is false or misleading about a statement, and why it is false." Rubke v. Capitol Bancorp Ltd., 551 F.3d 1156, 1161 (9th Cir. 2009) (internal quotations omitted). These requirements "ensure[] that allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985).

    2. **APPLICATION**

        *a. The Duty to Disclose the Alleged Safety Hazard*

      Plaintiffs' case focuses on Apple's alleged duty to disclose the power button defect because it creates a safety hazard. (SAC ¶¶ 13-17.) Specifically, Plaintiffs assert two potential "safety hazards", both of which are set forth below:

> [T]he defect at issue in this case, when it manifests, prevents the device from being turned off. The only way to turn off the items at issue is to allow the battery to drain until dead, a process that can take several days. Thus, every time [Plaintiffs] or another owner of a defective iPhone 4 or iPhone 4s brings the device on an airplane, unless the individual has thought ahead and gone through the inconvenience and time required to allow the battery to drain, the defect causes potential interference with 'communications, navigation, flight control, and electronic equipment' in the airplane. The defect thus presents a safety hazard not only to the owner, but to everyone else on the airplane, as well as potentially people on the ground.

/ / /

Case 2:13-cv-02003-GAF-AJW Document 33 Filed 08/28/13 Page 11 of 16 Page ID #:661

LINKS: 22, 24

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-02003 GAF (AJWx) | Date | August 28, 2013 |
|---|---|---|---|
| Title | Ross Missaghi v. Apple Inc et al | | |

Another safety hazard relates to the inability to 'reboot' the devices at issue. The iPhone 4 and iPhone 4s, like all 'smart phones,' are essentially computers, and, from time to time, suffer from software 'glitches' which require rebooting before the device will function again. As set forth above, the products in which this defect has manifested cannot be rebooted without letting the battery completely drain, a process which can take a period of days. Thus, if an iPhone 4 or iPhone 4s with a defective power button 'freezes up' or suffers another malady which requires rebooting before it can be used, it will become completely non-functional for a period of potentially days.

The foregoing non-functionality presents a serious safety hazard. [Plaintiffs] are informed and believe that, years ago, public telephones were plentiful and could be easily located on street corners, at service stations, and other public places. At the present time, however, payphones are, and have been for a number of years, virtually extinct. Moreover, [Plaintiffs] are informed and believe that many people no longer keep a home telephone (i.e., a 'land line'), and instead use their mobile phones for communicating home and away. In this situation, the owner of an iPhone 4 or iPhone 4s that suffers from the defect at issue could be prevented from contacting 911 Emergency Services in the event of a medical or other emergency.

(SAC ¶¶ 14-16.)

In California, "[a] manufacturer's duty to consumers is limited to its warranty obligations absent either an affirmative misrepresentation or a safety issue." Oestreicher v. Alienware Corp., 322 Fed. Appx. 489, 493 (9th Cir. 2009) (citing Daugherty v. American Honda Motor Co., Inc., 51 Cal. Rptr. 3d 118, 126-27 (Cal. App. 2d Dist. 2006)); see also Smith v. Ford Motor Co., 462 Fed. Appx. 660, 663 (9th Cir. 2011); O'Shea v. Epson Am., Inc., 2011 U.S. Dist. LEXIS 85273, 26-27 (C.D. Cal. July 29, 2011). Plaintiffs seek to take advantage of the safety exception. However, Plaintiffs' purported safety defects are so remote and speculative as to fail as safety hazards as a matter of law. In Smith v. Ford Motor Co., the Ninth Circuit affirmed the district court's ruling that "the failure of Ford to disclose the risk that ignition locks in its Focus vehicles from model years 2000 through 2006 would fail after the warranty expired" was simply "too speculative, as a matter of law, to amount to a safety issue giving rise to a duty of disclosure." 462 Fed. Appx. at 662-63. The Ninth Circuit so held despite the assertion that "the failure rate of the Focus ignition locks was related to safety because a defective lock may prevent the driver from starting the engine, thereby leaving the driver stranded on the roadway, or may prevent the engin[e] from being shut off, rendering the vehicle vulnerable to runaway or theft." Id. at 663. Similarly, Judge Snyder in this District held that "the mere risk of getting

| CV-90 (06/04) | CIVIL MINUTES - GENERAL | Page 11 of 16 |
|---|---|---|

Case 2:13-cv-02003-GAF-AJW   Document 33   Filed 08/28/13   Page 12 of 16   Page ID #:662

LINKS: 22, 24

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-02003 GAF (AJWx) | Date | August 28, 2013 |
|---|---|---|---|
| Title | Ross Missaghi v. Apple Inc et al | | |

stranded on the roadside does not amount to a safety concern" implicating the duty to disclose. Eisen v. Porsche Cars N. Am., Inc., 2012 U.S. Dist. LEXIS 116836, at *14 (C.D. Cal. Feb. 22, 2012).

Plaintiffs' alleged safety concerns are far too speculative to warrant imposing a duty to disclose.  See, e.g., Wilson v. Hewlitt-Packard, 668 F.3d 1136, 1144 (9th Cir. 2012) (requiring a "sufficient nexus between the alleged design defect and the alleged safety hazard").  If an iPhone power button prevents a phone from being turned off for flight, the owner can readily notify a flight attendant, who can then take whatever action is deemed appropriate.  Moreover, the Court is not aware of any authority that if a cell phone owner has a heart attack or otherwise needs to call 911, but cannot because of any defect in the phone, the phone manufacturer is liable. "Glitches" like the one Plaintiffs allude to could happen at any time in any phone for an untold number of reasons, and thus could make placing an emergency call difficult.  Furthermore, that safety concern is no less speculative than the concern addressed in Smith regarding being stranded on the road.  Certainly being stranded in a broken down car, where there may not even be cell service, is as speculative a safety concern as being stranded with a broken phone.

Because Plaintiffs have not alleged plausible safety concerns proximately resulting from the alleged defect, (e.g., Keegan v. Am. Honda Motor Co., 838 F.Supp.2d 929 (C.D. Cal. 2009) (defective tires)), they have offered no legal basis for their claims.  As noted in one district court decision in the Northern District, "[t]here is no authority that provides that the mere sale of a consumer electronics product in California can create a duty to disclose any defect that may occur during the useful life of the product."  Hoey v. Sony Elecs. Inc., 515 F. Supp. 2d 1099, 1105 (N.D. Cal. 2007).  Because there is no safety hazard within the meaning of the law, that alone is sufficient to warrant the dismissal of the pending claims.  However, the Court will nevertheless conduct a detailed review of the claims below.

      *b. Plaintiffs' Claims*

         **i. RICO Claim**

"The elements of a civil RICO claim are simple enough: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to the plaintiff's 'business or property.'"  Grimmett v. Brown, 75 F.3d 506, 510 (9th Cir.1996). The RICO statute states that a "'pattern of racketeering activity' requires at least two acts of racketeering activity . . . ."  18 U.S.C § 1961.  "'Racketeering activity' is any act indictable under several provisions of Title 18 of the United States Code . . . ."  Turner v. Cook, 362 F.3d

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-02003 GAF (AJWx) | Date | August 28, 2013 |
|---|---|---|---|
| Title | Ross Missaghi v. Apple Inc et al | | |

1219, 1229 (9th Cir. 2004) (citing 18 U.S.C. § 1961(1)). The Section 1961(1) list of predicate acts is exhaustive. Beck v. Prupis, 529 U.S. 494, 497 n.2 (2000). Mail fraud and wire fraud are predicate acts. Turner, 362 F.3d at 1229. Common law fraud, like other garden variety state claims, is not a predicate act. Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639, 653 (2008) ("Congress chose to make mail fraud, not common-law fraud, the predicate act for a RICO violation."); Annulli v. Panikkar, 200 F.3d 189, 200 (3d Cir. 1999) ("[I]f garden-variety state law crimes, torts, and contract breaches were to constitute predicate acts of racketeering (along with mail and wire fraud), civil RICO law, which is already a behemoth, would swallow state civil and criminal law whole.")

Apple asserts that Plaintiffs fail to adequately allege that Apple engaged in any predicate acts. (Dismiss Mem. at 11-14.) Giving Plaintiffs' SAC a generous reading, Plaintiffs' sole conceivable predicate acts, which are never clearly set forth, appear to be: (1) Apple committed mail and wire fraud by engaging in "interstate communications with AT&T, via email and US Mail" and therein "deliberately fail[ing] to disclose the above described power button defect," and (2) misrepresenting that the defect could not be fixed. (SAC ¶¶ 32-33.) These allegations contain two fundamental defects. First, Plaintiff has failed to allege that Apple's actions were undertaken on behalf of the alleged enterprise. Second, Plaintiffs fail to adequately allege any predicate acts.

Regarding the first problem, in the words of the Southern District of New York, "courts must always be on the lookout for the putative RICO case that is really nothing more than an ordinary fraud case clothed in the Emperor's trendy garb." Schmidt v. Fleet Bank, 16 F. Supp. 2d 340, 346 (S.D.N.Y. 1998) (internal quotations and citation omitted). Those words could have been written for this case. Plaintiffs here assert that Apple and AT&T formed an association-in-fact, whose purpose was to "sell as many iPhones as possible." (SAC ¶¶ 29-30, 35.) Plaintiffs then allege that Apple, without the apparent knowledge or consent of AT&T, decided to engage in a fraudulent scheme. (Id. ¶¶ 31-32.) Therein lies the problem. What Plaintiffs have alleged is a garden variety, run-of-the-mill business relationship and Apple's unilateral decision to commit fraud. In other words, "[t]his type of interaction . . . shows only that the defendants had a commercial relationship, not that they had joined together to create a distinct entity for purposes of" committing illegal acts. United Food & Commer. Worker Unions & Emplrs. Midwest Health Bens. Fund v. Walgreen Co., 719 F.3d 849, at *15 (7th Cir. 2013). "[T]he activities the complaint describes are entirely consistent with" AT&T and Apple "each going about its own business"; "nothing in the complaint reveals how one might infer that [Apple's] communications or actions were undertaken on behalf of the *enterprise* as opposed to on behalf of [Apple in its] individual capacit[y], to advance [its own] individual self-interests." Id. at *14-15 (emphasis in original); see also Crichton v. Golden Rule Ins. Co., 576 F.3d 392, 400 (7th Cir. 2009)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-02003 GAF (AJWx) | Date | August 28, 2013 |
|---|---|---|---|
| Title | Ross Missaghi v. Apple Inc et al | | |

("Crichton has done no more than describe the ordinary operation of a garden-variety marketing arrangement between Golden Rule and the Federation. His allegations of the Federation's role suggest it was merely a conduit for the sale of Golden Rule's insurance. . . . What Crichton alleges here is a fraud perpetrated by Golden Rule . . . . That is, Crichton's claim 'begins and ends' with the fraud allegedly committed by Golden Rule."). In short, Plaintiffs have alleged an independent fraud connected to a business relationship, which is a conduct as to which RICO as no application. See Reves v. Ernst & Young, 507 U.S. 170, 185 (1993) ("[L]iability depends on showing that the defendants conducted or participated in the conduct of the 'enterprise's affairs,' not just their own affairs."); United Food, 719 F.3d at *16 ("RICO does not penalize parallel, uncoordinated fraud.").

Regarding Plaintiffs' alleged predicate acts, Plaintiffs fail to adequately allege that Apple committed any. Plaintiffs' alleged wire and mail fraud predicate acts necessarily fail, for the reasons stated above, because Apple had no duty to disclose the alleged power button defect. See California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1472 (9th Cir. 1987) ("Absent an independent duty, such as a fiduciary duty or an explicit statutory duty, failure to disclose cannot be the basis of a fraudulent scheme."). Additionally, oral misrepresentations - common law fraud - are not predicate acts. Plaintiffs allege two false oral representations and one email communication with Apple employees. (SAC ¶¶ 20-21.) While the single email communication - though poorly pleaded - could suffice as wire fraud, it would amount to only a single predicate act. Furthermore, Plaintiffs' allegations plainly fail to meet the Federal Rule of Civil Procedure 9(b) heightened pleading standards, which apply to fraud-based RICO predicate acts. See Moore v. Kayport Package Express, 885 F.2d 531, 541 (9th Cir. Cal. 1989); Alan Neuman Productions, Inc. v. Albright, 862 F.2d 1388, 1392 (9th Cir. 1988). Regarding Plaintiffs' mail and wire fraud claims, Plaintiffs fail to identify any specific communications that were made between Apple and AT&T, and therefore failed to show how they participated in the enterprise through a pattern of racketeering activity. The number and content of those communications is an unknown. Regarding the representations made by the Apple employees regarding the repairability of the alleged power button defect, Plaintiffs fail to indicate why the representations made to them were actually false. The mere assertion that Plaintiffs "are informed and believe that the [representations] w[ere] in fact false," (SAC ¶ 22), is insufficient.

Accordingly, Plaintiffs' RICO claim is **DISMISSED**.

/ / /

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | CV 13-02003 GAF (AJWx) | Date | August 28, 2013 |
|---|---|---|---|
| Title | Ross Missaghi v. Apple Inc et al | | |

### ii. UCL Claim

California Business & Professions Code Section 17200 prohibits "any unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. To state a claim for an "unlawful" business practice under section 17200, a plaintiff must assert the violation of some other law. Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co., 20 Cal. 4th 163, 180 (1999). An act or practice is "unfair" under the UCL "if the consumer injury is substantial, is not outweighed by any countervailing benefits to consumers or to competition, and is not an injury the consumers themselves could reasonably have avoided." Daugherty v. Am. Honda Motor Co., Inc., 51 Cal. Rptr. 3d 118, 129 (Cal. App. 2d Dist. 2006). Finally, conduct violates the "fraudulent" prong of the UCL if it is "likely to deceive." Campos v. Bank of Am., Inc., 2011 U.S. Dist. LEXIS 70407, at *26 (N.D. Cal. June 30, 2011).

The sole bases of Plaintiffs' UCL claim is that Apple failed to disclose the alleged power button defect prior to sale and represented to its customers that the alleged defect was not repairable. (SAC ¶¶ 39, 40.) These allegations sound in fraud and must be pleaded with particularity. See Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009). However, as set forth above, Apple did not have a duty to disclose and therefore that allegation cannot support the existence of a fraudulent scheme, and Plaintiffs failed to allege the false representations with particularity.

Accordingly, Plaintiffs' UCL claim is **DISMISSED**.

### C. MOTION TO STRIKE

Because the Court dismissed Plaintiffs' only two claims, the Court **DENIES** Apple's motion to strike as **moot**.

### IV. CONCLUSION

Based on the foregoing discussion, the Court rules as follows:

(1) Apple's motion to compel arbitration is **DENIED**
(2) Apple's motion to dismiss is **GRANTED** in its entirety.
(3) Apple's motion to strike is **DENIED** as moot.

LINKS: 22, 24

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-02003 GAF (AJWx) | Date | August 28, 2013 |
|---|---|---|---|
| Title | Ross Missaghi v. Apple Inc et al | | |

    At this point Plaintiffs have attempted - and failed - at pursuing theories predicated on breach of warranty and RICO.  The Court will permit Plaintiffs **one final** opportunity to file an amended pleading setting forth any and all remaining theories of liability.  Plaintiff must file an amended pleading **no later than 5:00 p.m. Friday, September 13, 2013**.


    **IT IS SO ORDERED.**